UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS. 1:02CR367 |
| | ) | 1:03CR136 |
| Plaintiff | ) | |
| | ) | SENIOR JUDGE |
| vs. | ) | CHRISTOPHER A. BOYKO |
| | ) | |
| EDWARD LEGETTE-BEY, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant Edward Legette-Bey's Motion for Compassionate Release (Docs.[1] 139 & 142). For the following reasons, the Court **GRANTS** Defendant's Motion as prayed for in the alternative and reduces Defendant's sentence to 360 months and one day.

**I. BACKGROUND**

On August 28, 2002[2] and again on April 2, 2003[3], a Grand Jury indicted Defendant on counts relating to multiple armed robberies, use of a firearm during a crime of violence and being a felon in possession of a firearm. Defendant proceeded to a Jury Trial. On June 5, 2003, the Jury found Defendant guilty of most counts.[4] On August 7, 2003, the Court sentenced

---

[1] A Grand Jury indicted Defendant in two separate criminal cases. *See infra* notes 2 & 3. Unless otherwise noted, all document references are to the Docket in 1:02CR367.

[2] Case Number 1:02CR367; Defendant faced two counts of Armed Bank Robbery, two counts of Using a Firearm during a Crime of Violence and one count of Felon-in-Possession.

[3] Case Number 1:03CR136; Defendant faced six counts of Armed Bank Robbery and six counts of Using a Firearm During a Crime of Violence.

[4] The Jury convicted Defendant on Count Six (Felon-in-Possession) of 1:02CR367 and all twelve counts of 1:03CR136.

Defendant to a total of 1846 months[5] imprisonment. Defendant is 67 years old and currently serving his sentence at USP Allenwood. To date, he has served roughly 220 months.

On May 21, 2020, Defendant filed his *pro se* Motion for Compassionate Release. (Doc. 139). Under the District's General Order, the Court referred Defendant's Motion to the Federal Public Defender's Office for supplementation, which occurred on June 17, 2020. (Doc. 142). The Government filed an initial Response (Doc. 143) and Defendant Replied (Doc. 144).

On August 28, 2020 and again on December 1, 2020, Defendant supplemented his Motion. (Docs. 148 & 152). The Government filed a Supplemental Response (Doc. 154) and, again, Defendant filed a brief Supplemental Reply (Doc. 155).

## II. LAW & ANALYSIS

### A. Standard of Review

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, in certain circumstances, a defendant may ask the court to modify a sentence, colloquially known as "compassionate release." *Id.* at § 3582(c)(1)(A). While frequently thought of as requiring immediate release, the statute allows a district court to "reduce but not eliminate a defendant's prison sentence[.]" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see also*, *United States v. Rodriguez*, --- F. Supp. 3d ----, 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) (reducing life sentence to 30 years).

Before requesting a reduction, a defendant must exhaust his administrative remedies. *Id.*; *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). Both parties agree that Defendant here

---

[5] The Sentence reflects the following: 262 concurrent months on Counts 1, 3, 5, 7, 9, 11 and Count 6 of 1:02CR367; 84 consecutive months on Count 2; and 300 consecutive months on each of Counts 4, 6, 8, 10 and 12, for a total of 1500 months.

has exhausted his administrative remedies.  (*See* Doc. 143, PageID: 157; Doc. 154, PageID: 355).

After a defendant exhausts his administrative remedies, he may ask the court for compassionate release.  A district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).[6]

However, the Sixth Circuit recently determined that, when an imprisoned person files his own request for sentence reduction, there is no applicable policy statement.  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020).  That is because the once-applicable policy statement— U.S.S.G. § 1B1.13—was rendered 'inapplicable' by the passage of the First Step Act and the Sentencing Commission's subsequent failure to update the policy statement.  *Id.* at 1109-11.  Therefore, federal courts may forgo consulting the policy statement and define 'extraordinary and compelling reasons' on their own.[7]  *Id.* at 1111.

After *Jones* then, district courts must: 1) "find" that extraordinary and compelling reasons support a reduction; and 2) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  *Id.* at 1101 (citing 18 U.S.C. § 3582(c)(1)(A)).  Regarding the first finding, "district courts have discretion to define 'extraordinary and compelling' on their own initiative," *United States v. Elias*, --- F.3d ----, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021), but a defendant's

---

[6] There is a second scenario that entitles a defendant to relief based on his age, but that section is not applicable to Defendant.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

[7] The Court acknowledges the Government's position on *United States v. Jones*, (*see* Doc. 154, PageID: 359-64), but disagrees with the Government's conclusion.  Further guidance from the Sixth Circuit confirmed "§ 1B1.13 is not an applicable policy statement for compassionate release motions brought directly by inmates…[and] district courts have discretion to define 'extraordinary and compelling' on their own initiative.  *United States v. Elias*, --- F.3d ----, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

rehabilitation alone is not enough. 28 U.S.C. § 994(t). And when it comes to the second consideration, a district court is "obligate[d] to provide reasons" for its decision, especially when the original sentencing judge and the compassionate release judge are different persons. *Jones*, 980 F.3d at 1112-13.

Ultimately, "[t]he defendant has the burden to show that he is entitled to a sentence reduction" under § 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

**B.    Extraordinary and Compelling Reasons**

Defendant argues that his age, medical conditions, COVID-19 and prison conditions constitute extraordinary and compelling reasons for a sentencing reduction. He highlights a brain mass, seizures and a cerebral aneurysm. Defendant suffered three seizure-like episodes in 2020. As such, his health is declining. Moreover, the Bureau of Prisons has not provided adequate medical advice in order to allow Defendant to make an informed decision about his prognosis. All this combined with COVID-19 and his advancing age present extraordinary and compelling reasons for a sentence reduction to time-served.[8]

The Government disagrees with Defendant's claim. According to the Government, the Bureau of Prisons is adequately addressing Defendant's medical concerns. A review of Defendant's medical records demonstrate that his health concerns are promptly handled. Defendant has been at the same Care Level Three since November of 2013, which is not even the highest level the Bureau provides. With respect to the brain mass and aneurysm, Defendant

---

[8] A majority of Defendant's prior briefing focused on whether he met the conditions under U.S.S.G. § 1B1.13, Application Note 1(B) – Age of the Defendant. Under that commentary, a defendant who (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years of his term of imprisonment, may establish extraordinary and compelling reasons for a sentence reduction. But the Sixth Circuit's decision in *Jones* clarified that this policy statement is no longer applicable.

- 4 -

previously declined procedures to remedy the situation. And Defendant has not experienced a seizure since he resumed taking a specific medication.

In light of the COVID-19 pandemic, Defendant's individual circumstances present extraordinary and compelling reasons for a reduction. Like many courts during this pandemic, the Court relies on official guidelines from the Centers for Disease Control and Prevention in determining whether extraordinary and compelling reasons warrant a reduction. *See Elias*, 2021 WL 50169, at *4. It is also well-known that risks of severe complications from COVID-19 increase with age. The CDC highlights that eight out of ten COVID-19 deaths in the United States "have been in adults 65 years old and older."[9] Defendant, at 67 years old, falls squarely in that high-risk category.

Additionally, Defendant's health condition is concerning. He has a myriad of health conditions. Most relate to the typical aging-process. His seizures on the other hand seem atypical. He experienced three seizure-like episodes in 2020. He attributes these episodes to the brain mass and aneurysm, both of which he refused treatment of in the past. But now, he is allegedly ready to treat them. However, even when he eventually received his MRI, the Bureau has made it difficult for Defendant (and this Court) to properly weigh his options in receiving additional treatment which would include removal of the mass.

Finally, Defendant suffers from hypertension, a condition that the CDC warns might increase a person's risk of severe complications from COVID-19.[10] While the Court agrees with

---

[9] CENTERS FOR DISEASE CONTROL AND PREVENTION, "Older Adults," (updated Dec. 13, 2020), *available at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults html (last visited Jan. 14, 2021).

[10] CENTERS FOR DISEASE CONTROL AND PREVENTION, "People with Certain Medical Conditions," (updated Dec. 29, 2020), *available at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions (last visited Jan/ 14, 2021).

the Government that hypertension by itself does not equate to an extraordinary and compelling reason, this, in addition to his age and brain condition, gives the Court pause.

As the nation experiences an uptick in COVID-19 cases, so is the facility where Defendant is incarcerated. At the time the Government originally responded to Defendant's Motion in June of 2020, USP Allenwood had zero confirmed cases of COVID-19. As of this Order, there have been over 130 confirmed inmate cases. Fortunately, many of those inmates recovered. Tragically however, there has been at least one inmate death attributed to COVID-19 since the summer.[11]

Defendant's age and health conditions, plus the spread of COVID-19, put him in a precarious position to suffer severe consequences should he contract the virus. Given the specific and unique facts of this case, the Court finds the presence of extraordinary and compelling reasons to warrant a sentence reduction.

## C. The Section 3553(a) Factors

As discussed below, the Court finds that the § 3553(a) factors do not merit immediate release. However, Defendant's advancing age, health conditions and good behavior in custody warrant a reduction in sentence to 360 months and one day.[12]

*Nature and Circumstances of the Offense; Defendant's History and Characteristics.* The nature and circumstances of the offense are horrid. Defendant, with co-conspirators, robbed five separate banks, six times over two and a half years. He possessed a firearm during each robbery. As one can imagine, Defendant's crime spree left a wake of victims, from bank employees to

---

[11] Federal Bureau of Prisons, "COVID-19: Coronavirus," (updated Jan. 13, 2021), *available at*: https://www.bop.gov/coronavirus/ (last visited Jan. 14, 2021).

[12] Defendant requested the Court reduce his sentence to "300 months or any number that this Court deems appropriate" if immediate release is not merited. *See* Doc. 155, PageID: 374, note 4.

customers, who were terrified by Defendant's actions.  Moreover, Defendant's criminal record truly encompasses the designation of a "career offender."  His history contains multiple incidences of violence, from armed robbery to domestic violence to second degree murder.  His first bank robbery took place two months after his conviction (and while still on probation) for domestic violence.  And he was not a young man during his robberies—45 years old when he started; 48 years old when he was apprehended.  Moreover, while Defendant seemed to struggle with addiction in the past, he reported being sober since December 31, 1998, a fact that reflects Defendant's robberies were not fueled by addiction.

Rightfully so, Defendant has spent the past 18 years in Federal prison.  But his record in prison reflects a change in attitude and behavior.  He has successfully completed multiple programs.  He has been incident free and a model inmate.  He works as an orderly for the facility, a position of trust.  And as discussed above, his health conditions place him in a precarious position given the COVID-19 pandemic and its effects on the prison population.

While Defendant's crimes were horrible and his criminal history even worse, it is somewhat mitigated by Defendant's recent behavior and health conditions while incarcerated.  Thus, immediate release is not warranted.  But Defendant's consistent good behavior during his incarceration, his age and declining health comfort the Court in finding Defendant a changed individual.

*Kinds of Sentences Available*.  Continued incarceration presents a threat to Defendant's health.  The conditions inside prisons are not conducive to complying with CDC Guidelines, like social distancing and proper hygiene.  And given Defendant's preexisting conditions, he potentially faces severe consequences should he contract COVID-19.  However, the recent

advancements in the treatment of COVID-19, including the availability of a vaccine, gives the Court hope that the difficult conditions will soon be abated.

At the same time COVID-19 is impacting prison populations, it is having a similar effect on the general population. Immediate release into a society still handling the pandemic and recovering from job-loss does not further Defendant's education or vocational opportunities.

*Kinds of Sentences and Sentencing Range Established.* Because of his crimes and criminal history, Defendant faced significant criminal penalties. The trial judge at the time imposed a penalty that coincided with statutory minimums at that time. But times have changed and Congress has reduced these statutory penalties significantly.

According to Defendant's calculation, if resentenced today, his sentence would be reduced by 1080 months, or 90 years. Applying that calculation further, Defendant would still face a sentence of over 60 years imprisonment.

But since Defendant's original sentencing, the Supreme Court allowed district courts to take into consideration the mandatory nature of a § 924(c) conviction when determining the sentence for the predicate offense. *See Dean v. United States*, 137 S. Ct. 1170, 1176-77 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count").

*Sentencing Disparities.* Both of Defendant's co-defendants have already completed their terms of incarceration. Reducing Defendant's sentence as outlined ensures any further sentencing disparity is limited.

*Restitution to the Victims.* Defendant was ordered to pay $123,651.00 in restitution. It is unclear how much remains. Defendant shall continue to pay restitution until the obligation is

satisfied.  Moreover, while there were human victims because of Defendant's actions, the Court has not received a statement from any victim concerning Defendant's pending Motions.

*Need for Sentence Imposed.*  Defendant's time in prison reflects the seriousness of his offense.  It provided just punishment and promoted respect for the law.  But in total, his Sentence is overly punitive, especially in light of societal changes.  However, immediate release is not justified at this time.  By reducing his sentence as the Court does here, it will protect the public from further crimes.  Finally, Defendant has taken advantage of educational training while incarcerated.  The Court expects Defendant to do the same once programming resumes.

### III. CONCLUSION

Defendant's rehabilitation, together with the unique hardship and risk of severe illness imposed by the pandemic, constitute extraordinary and compelling reasons justifying a reduction in his sentence.  While the nature of the crime and Defendant's criminal history prevent the Court from granting immediate release, the Court concludes that a reduction to a sentence of 360 months and one day imprisonment,[13] to be followed by 10 years of supervised release, is both warranted by those extraordinary and compelling reasons and appropriate considering the § 3553(a) factors.  Accordingly, the Court **GRANTS, as prayed for in the alternative,** Defendant's Request for Compassionate Release.  (Docs. 139 & 142).

In addition to the standard and special conditions previously imposed, upon release:
- Defendant must submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer.  Failure to submit to a search may be grounds for revocation of release.  Defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition.  The probation officer may conduct a search under this condition only when

---

[13] In light of Congressional and Supreme Court changes, Defendant's Sentence is reduced as follows: one day on Counts 1, 3, 5, 6, 9, 11 and Count 6 of 1:02CR367; 60 consecutive months on Count 2; and 60 consecutive months on each of Counts 4, 6, 8, 10 and 12, for a total of 300 months.  For the reasons discussed throughout this Order, the Court holds this Sentence accomplishes the goals of just punishment, deterrence, protection of the public and Defendant's rehabilitation.

reasonable suspicion exists that Defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner;

- Defendant must apply all monies received from income tax refunds, lottery winnings, judgments, and/or any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation; and

- Defendant shall participate in an approved program of substance abuse testing and/or outpatient or inpatient substance abuse treatment as directed by his supervising officer; and abide by the rules of the treatment program.  The Probation Officer will supervise Defendant's participation in the program (provider, location, modality, duration, intensity, etc.).  The Defendant shall not obstruct or attempt to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing.

**IT IS SO ORDERED.**

                               **s/ Christopher A. Boyko**
                               **CHRISTOPHER A. BOYKO**
                               **Senior United States District Judge**

**Dated: January 20, 2021**